A. TURNER SHAW, JR., ADMINISTRATOR OF THE ESTATE OF HARRY K. MUSSELMAN, DECEASED v. PAUL G. SYLVESTER, ADMINISTRATOR OF THE ESTATE OF OTTO W. BECKER, DECEASED.

(Filed 12 October, 1960.)

1. **Automobiles § 38: Evidence § 48— Evidence of physical facts at the scene held insufficient predicate for expert testimony as to which of occupants was the driver.**

    Evidence of physical facts at the scene permitting the inference that the vehicle in question, traveling at great speed, catapulted through the air, once for 37 feet and again for 55 feet, before it came to rest in a creek with its right door open and folded back into the fender and its left door torn off, that the body of one of the two occupants was found on the shoulder of the road and the body of the other occupant was found in the creek beyond the wrecked vehicle, without evidence as to whether the movement of the car in the air was end over end or otherwise, *is held* insufficient to qualify a traffic officer, notwithstanding his schooling and experience in regard to traffic accidents, to testify as to which of the occupants was driving at the time of the accident, since, even though the evidence may permit the inference as to which occupant was first thrown from the vehicle, it leaves in conjecture through which door each occupant was thrown or whether the driver or passenger was first thrown therefrom, the question being one of physics without evidence of the predicate facts upon which an expert conclusion may be drawn.

2. **Automobiles § 41p—**

    Evidence of physical facts at the scene permitting the inference that the vehicle in question, traveling at great speed, catapulted through the air, once for 37 feet and again for 55 feet, before it came to rest in a creek, that the body of one of the two occupants was found on the shoulder of the road and the body of the other occupant was found in the creek beyond the wrecked vehicle, with evidence that the vehicle was

owned by one of the occupants, *is held* insufficient to be submitted to the jury on the question of which of the two occupants was the driver of the vehicle at the time of the accident.

APPEAL by plaintiff from *Parker, J.,* July 1960, Civil Term, ONSLOW Superior Court.

Civil action by the plaintiff, administrator, to recover for the alleged wrongful death of his intestate, Harry K. Musselman. The action is brought against the administrator of Otto W. Becker, the owner of a 1956 Ford coupe in which both Musselman and Becker were killed when the vehicle ran off the road on the night of November 15, 1958.

The evidence disclosed the Ford coupe with two men in it was traveling south on U. S. Highway 17 at about 1:15 a.m. After passing a highway patrol car the Ford, having increased its speed to about 80 miles per hour, failed to make a curve, ran off the road to the right, wrecked, and finally came to rest in Hicks Run Creek. Becker's dead body was on the shoulder about 6 or 8 feet from the surface a few feet beyond the point where the tracks left the shoulder and apparently plunged into the creek. Musselman's dead body was found in the creek beyond the wrecked vehicle.

Sgt. Etherage of the Traffic Division, Provost Marshal's Section of the Marine Corps, testified: "The marks left the righthand side of the road, onto the right shoulder, as tire prints, traveled a considerable distance and turned in a furrow type skid . . . similar to the furrow that a plow would throw up. . . . At the beginning, the furrows were really narrow . . . they increased in width and depth. These markings continued from where they left the highway (surface) until they stopped 187 feet. From the end of the marks . . . until there was another or more marks on the ground, was 37 feet; from that place to where there were some more marks, was 55 feet and then the car was a considerable distance from there on out in the water . . . The shoulder of Highway #17 is approximately 15 feet above the water level of the creek."

The vehicle, when taken from the creek, showed the following damage: The left side, left fenders and top were crumpled and pushed in. The left door was missing. The hood was damaged. The right front fender was "mangled." The right rear fender had some damage. The right door was opened and folded "forward against the right front fender and . . . mangled."

The plaintiff sought to qualify Sgt. Etherage as an "expert on traffic reconstruction so that he might testify, based on assuming cer-

tain facts which already are in evidence, as to which door the deceased Otto Becker was thrown from . . ." The witness gave the following testimony as to his qualifications:

"In my work with the traffic investigation division of the Marine Corps, I have investigated between 400 and 500 automobile accidents. I am a graduate of special schools in connection with this work. I graduated from N. C. Highway Patrol School last year, the Motor Vehicle Traffic Control School, Northwestern University, a month and a half or so ago. I studied traffic engineering, traffic safety and accident reconstruction at Northwestern University. At the N. C. Highway Patrol School, the majority of my instructions consisted of your N. C. Laws and liquor laws, laws of arrest, search and seizure, general laws that apply to law enforcement in this State, and there was one week of accident investigation."

The court made the following ruling to which the plaintiff excepted:

"I doubt that the opinion would be competent, under the evidence. The evidence is that the car left the highway traveling 187 feet; the last few feet looked like a plowed furrow; then there was a gap some 37 feet and then another gap of some 50 feet. As a matter of common knowledge, the inference would arise that that car would have turned in any direction. It could be going end over end or side to side. It would be more in the line of the study of physics. I think that the jury is in as good a position to draw their own opinion and conclusion from the evidence as an expert. I don't believe that this is a subject where an expert would be helpful to the jury."

The plaintiff then asked a hypothetical question including substantially all the facts in evidence, except that the right door of the vehicle was also open. The court sustained the defendant's objection. If permitted, the witness would have answered: "I have an op'nion. The opinion is Becker came out the left door after the car had turned over."

The court sustained the defendant's motion for compulsory nonsuit and entered judgment dismissing the action. The plaintiff excepted and appealed.

*Charles F. Blanchard and Robert L. Farmer, for plaintiff, appellant.*
*Joseph C. Olschner, for defendant, appellee.*

HIGGINS, J. Plaintiff presents three assignments of error: (1) Failure to permit Sgt. Etherage to give his opinion that Becker was thrown from the left door of the Ford; (2) failure to hold Sgt. Ether-

age qualified as an expert "in the field of highway traffic reconstruction"; (3) failure to permit the plaintiff to go to the jury.

The evidence in the case was ample to show the defendant's intestate was the owner and one of the two occupants of the vehicle at the time of the wreck. It is ample to show that the driver was operating at approximately 80 miles per hour and that driver negligence proximately caused the death of both occupants.

Is there sufficient evidence to show defendant's intestate was the driver? This Court held in *Parker v. Wilson*, 247 N.C. 47, 100 S.E. 2d 258, that ownership alone is not sufficient to permit a reasonable inference the owner, though in the vehicle, was the driver at the time of the wreck.

Plaintiff sought to qualify Sgt. Etherage as an expert in the reconstruction of automobile accidents and have him testify in answer to a hypothetical question that in his opinion Becker was thrown from the left door of the car and was, therefore, the driver. The facts upon the basis of which he formed the opinion were: The Ford coupe in which Becker and Musselman were riding left the hard surface of the road going south at a speed of 80 miles per hour. Tire marks and furrows plowed in the shoulders, increasing in width and depth, extended for 187 feet. At that point there was a break (indicating the vehicle left the ground) for 37 feet, at which point there were additional marks, and further on another break of 55 feet (indicating the vehicle again left the ground). A considerable distance beyond, the vehicle came to rest in the creek. The left door was gone. The right door was open and folded back into the fender. Both sides of the vehicle and the top were crumpled. The body of Becker was approximately 50 or 60 feet from the Ford. It was a little south of where the car stopped. This means the body was beyond the point where the vehicle came to rest.

The evidence permits the inference the vehicle, traveling at great speed, catapulted through the air twice, once for 37 feet and once for 55 feet, before it came to rest in the creek. Whether the movement in the air was end over end or otherwise is left to conjecture. From the position of the bodies it may be inferred that Becker was first thrown from the vehicle, but through which door is pure guesswork. The driver may or may not have been thrown from the vehicle before the passenger. That, too, is guesswork.

The known facts in this case leave too many unknowns and imponderables to permit any one to say with any degree of certainty who was the driver. This case furnishes a good illustration why "courts look with disfavor upon attempts to reconstruct traffic accidents by

means of expert testimony, owing to the impossibility of establishing with certainty the many factors that must be taken into consideration." *Conway v. Hudspeth*, (Ark.) 318 S.W. 2d 137. See also *Moniz v. Bettencourt*, 24 Cal. App. 2d 718, 76 P. 2d 535.

As a general rule, a witness must confine his evidence to the facts. In certain cases, however, an observer may testify as to the results of his observations and give a shorthand statement in the form of an opinion as to what he saw. For example, he may observe the movement of an automobile and give an opinion as to its speed in terms of miles per hour. However, one who does not see a vehicle in motion is not permitted to give an opinion as to its speed. A witness who investigates but does not see a wreck may describe to the jury the signs, marks, and conditions he found at the scene, including damage to the vehicle involved. From these, however, he cannot give an opinion as to its speed. The jury is just as well qualified as the witness to determine what inferences the facts will permit or require. *Tyndall v. Hines Co.*, 226 N.C. 620, 39 S.E. 2d 828.

The qualified expert, the nonobserver, may give an opinion in answer to a proper hypothetical question in matters involving science, art, skill and the like. The plaintiff contends Sgt. Etherage placed himself in this expert category by having investigated more than 400 wrecks. There is no evidence that wrecks follow any set or fixed pattern. An automobile, like any other moving object, follows the laws of physics; but which door came open first during the movement would depend upon the amount and direction of the physical forces applied, and the place of their application. There was no evidence the witness ever investigated an accident when both doors were open and both occupants thrown out. In this case neither the nonobserver nor the jury could tell who was the driver. *Tyndall v. Hines Co., supra; Everett v. Fischer*, 147 P. 189; *Burwell v. Sneed*, 104 N.C. 118, 10 S.E. 152.

The ruling of the trial court that Sgt. Etherage was not qualified to testify that Becker was thrown through the left door and, therefore, was the driver is in accordance with our decisions. The evidence at the trial was insufficient to raise a jury question. The judgment of nonsuit is

Affirmed.