CHARLES WAYNE HICKS, ADMINISTRATOR OF THE ESTATE OF JULIAN-
    NA MARIA STEPHENS HICKS (DECEASED) v. DINKY GRAY REAVIS
    AND ALINE OSBORNE REAVIS

No. 8522SC96

(Filed 17 December 1985)

1. **Automobiles and Other Vehicles § 46— opinions as to speed—based on sound alone—admissible only in relative terms**

   The trial court did not err in an action arising from an automobile collision by admitting testimony that defendants' car had been traveling at a "high rate of speed," "going fast," "constantly accelerating," "flying," and going "down the road at a high rate of speed, enormous rate of speed," but excluding testimony that defendants' car had been going "85 or 100 miles per hour" and "well over 100 miles per hour" where the witnesses had only heard defendants' car or caught a glimpse of the headlights. Sound alone is sufficient for the witness to give his opinion of the speed of the vehicle in relative terms, such as "fast," "flying by," etc., but sound alone does not provide sufficient perception for a layman to have a rational basis for giving an opinion as to actual speed. Moreover, even if it was error to exclude the opinions of the actual miles per hour, such error would have been harmless because there can be no doubt that plaintiff conveyed to the jury that defendants' automobile was traveling at an excessive rate of speed. N.C.G.S. 8C-1, rule 701.

2. **Automobiles and Other Vehicles § 46— opinion of speed—investigating officer—not witness to accident—properly excluded**

   The trial court did not err in an action arising from an automobile collision by excluding the testimony of a highway patrolman regarding the speed of defendants' car where the patrolman had not witnessed the accident but had based his opinion on his investigation of the accident scene. N.C.G.S. 8C-1, Rule 702.

3. **Appeal and Error § 30.2— failure to include answer in record—assignment of error overruled**

   Plaintiff's assignment of error was overruled where he alleged that the trial court erred in an automobile accident case by refusing to allow two witnesses to give their opinion of the cause of the wreck, but did not include in the record what their answers would have been. N.C.G.S. 8C-1, Rule 701.

APPEAL by plaintiff from *Collier, Judge*. Judgment entered 27 August 1984 in Superior Court, DAVIE County. Heard in the Court of Appeals 28 August 1985.

*Pope, McMillan, Gourley & Kutteh by William P. Pope; and Albert F. Walser for plaintiff appellant.*

*Petree, Stockton, Robinson, Vaughn, Glaze and Maready by James H. Kelly, Jr., Michael L. Robinson and J. Stephen Shi for defendant appellees.*

COZORT, Judge.

Two women were killed when the automobile in which they were riding pulled out in front of a car "travelling at a high rate of speed." The trial court excluded opinion testimony on the actual speed of defendants' automobile from plaintiff's witnesses who heard the sound of defendants' vehicle prior to the collision but never saw the car moving. We find no error.

Plaintiff, administrator of the estate of his deceased wife, Julianna Maria Stephens Hicks, brought this wrongful death action against the estate of the driver of the automobile in which Mrs. Hicks had been riding, and against the owner and operator of the other automobile involved in the collision. Prior to trial plaintiff settled with the estate of the driver of the vehicle in which Mrs. Hicks was riding, and a voluntary dismissal was entered in that part of the case.

At trial there was uncontradicted testimony that on 27 May 1982, at approximately 9:00-9:30 p.m., Ms. McDaniel and Mrs. Hicks were traveling east on Interstate 40 in Ms. McDaniel's Oldsmobile Cutlass. They traveled onto the exit ramp of the Interstate at Highway 601, made a left turn from the exit ramp onto Highway 601, and collided with defendants' automobile, a Chevrolet Camaro, which was traveling south on Highway 601. Highway Patrol Trooper L. E. Johnson investigated the accident and found skid marks measuring eighty-nine feet left by defendants' Camaro. Both cars were extensively damaged. The steel frame of the left side of the Cutlass was pushed in twenty-two inches. After the impact the Cutlass came to rest on the southeast side of the intersection on the other side of Highway 601. The Camaro was near the center of the intersection facing south. There is a stop sign facing west in view of the cars proceeding east up the exit ramp from I-40. A passenger in defendants' car testified that the Cutlass never slowed down for the stop sign, pulling directly into the path of defendants' Camaro.

The only eyewitnesses to the accident were the occupants of the two cars, although several other witnesses heard the Camaro proceed along Highway 601 and heard the collision. The trial judge sustained defendants' objections to plaintiff's questions regarding the actual estimated speed the Camaro was traveling before the accident, based on the sound of the vehicle. The jury returned a verdict finding no negligence by defendants.

The primary issue for our consideration in this case is whether the trial court erred in excluding opinion testimony of two witnesses for the plaintiff. One would have given his opinion based solely on hearing the defendants' car go by that "[h]e was travelling in excess of 85 or 100 miles an hour." The other, who "saw the glimpse of lights . . . for a split second" and heard the car for 15 or 20 seconds, would have testified that, in his opinion, the speed of defendants' car "was well over 100 mph." We shall also consider whether the trial court properly excluded opinion testimony from the investigating officer that the defendants' car was travelling 85 miles per hour at the time of impact, with that opinion being based solely on his investigation after the accident occurred.

Dale Eugene Raney, a long-haul truck driver from Joplin, Missouri, had stopped at a commercial truck stop north of the intersection of I-40 and Highway 601 on the night of the collision. He was in his vehicle preparing to maneuver out of the parking lot when he heard a car come by "travelling at a high rate of speed." Raney's truck was three hundred feet from the center of Highway 601. He heard the vehicle for 10-15 seconds, until hearing a "crash" and a "boom," "sheet metal ripping, tearing, crumpling, like an accident had occurred." He described the sound of the car: "this loud vehicle that sounded like an engine with high RPM's, a hissing sound, traveling at a high rate of speed"; "a loud, hissing sound, raw noise of an engine turning excessive RPM's which the muffler was not capable of filtering out the sound." Raney, who owned a race car and had operated a muffler shop, was not permitted to testify before the jury on his opinion of the actual speed the car was traveling. His opinion was placed in the record: "I did not see the car; but, from my opinion of the noise which it was making, he was moving on. He was traveling in excess of 85 or 100 miles per hour. . . . My estimate of speed is based solely on sound."

John Loftin Hill lives on Highway 601 about one-fourth mile north of the truck stop where Raney had stopped on 27 May 1982. The back of his house faces the highway and is about 250 feet from the highway. He testified he was in his backyard sitting in the swing at about 9:00 p.m. on 27 May 1982 when he "heard a loud car go down the road at a high rate of speed. I saw the glimpse of lights go by kind of in between my neighbors' houses. It was dark and what I saw was just a glimpse of the lights as they went by. I just saw the lights for a split second because it was going, you know, so fast." Hill, who had some experience as a mechanic, described for the jury the sound of the car: "It was loud like a car going fast. I heard that sound for 15 or 20 seconds maybe. There were no interruptions in the sound except it was like changing gears; that's all the interruptions I heard." He was not allowed to give his opinion of the speed of the car. His opinion, placed in the record on voir dire, was: "I'd say it was well over 100 mph."

The general rule for the admission of opinion testimony on speed in North Carolina is that "a person of ordinary intelligence and experience is competent to state his opinion as to the speed of a vehicle when he has had a reasonable opportunity to observe the vehicle and judge its speed." *Nationwide Mutual Ins. Co. v. Chantos*, 298 N.C. 246, 250, 258 S.E. 2d 334, 336 (1979). "What is a reasonable opportunity to observe the vehicle and judge its speed is a question that must be determined by the trial judge, if it arises, in each case from the facts as they appear in the evidence." *Johnson v. Douglas*, 6 N.C. App. 109, 112-13, 169 S.E. 2d 505, 508 (1969).

[1] The precise question presented by this case is whether sound alone, without the witness seeing the vehicle at all, provides a reasonable opportunity to "observe" the vehicle and judge its speed in miles per hour. Our research has uncovered only one case in North Carolina where the issue of sound as the sole basis for opinion of speed was addressed. In *State v. Fentress*, 230 N.C. 248, 250, 52 S.E. 2d 795, 796 (1949), a witness testified that he was in his service station on the side of the road when the automobile in question came by with "the accelerator wide open." Defendant objected to this testimony. When the witness went outside, the accident had already occurred. He gave his opinion that the car was traveling at 85 miles per hour. Defendant, however, did not

object to this testimony. Our Supreme Court found no error in the admission of the testimony that the car came by at "a rapid rate of speed." In so holding, the court first noted that defendant's objection was subject to two criticisms which affected its "validity as presenting reversible error": first, the objection was "only to the [answer] and not made until the matter was in, under conditions which made exclusion discretionary with the court"; and, "[s]econd, testimony as to the identical matter was later introduced without objection." *Id.* at 251, 52 S.E. 2d at 797. Then the court noted that the testimony of "a rapid rate of speed" was supported by the circumstantial evidence at the crash scene. The court then said:

> When relevant to the issue, a witness may testify to any thing he has apprehended by any of his five senses, or all of them together. The objection goes to the weight and signifi-cance rather than to the competency of the evidence. At any rate, the witness later testified to substantially the same thing without objection.

*Id.*

Plaintiff argues that *Fentress* stands for the proposition that an estimate of actual speed based on sound alone is competent testimony. The defendants counter that *Fentress* is of minimal precedential value because the Supreme Court noted that the wit-ness later testified to substantially the same thing without objec-tion.

The defendants' argument has merit. None of the subsequent cases which cite *Fentress* have involved the issue of estimating actual speed on sound alone. Thus, we do not interpret *Fentress* as establishing a general rule that sound alone is sufficient basis for estimating actual speed. The issue of estimating speed in miles per hour was not before the court because no objection was taken to that testimony.

In other jurisdictions, the issue has been squarely faced. In *Meade v. Meade*, 206 Va. 823, 828-29, 147 S.E. 2d 171, 175 (1966), noting, "[i]t is generally held that a witness who did not actually see the motor vehicle in movement is incompetent to give testi-mony based on sound alone as to the speed at which it was mov-ing," the Supreme Court of Appeals of Virginia found prejudicial

error in the admission of testimony from a 14-year-old boy that the car was going over eighty miles per hour. The boy heard the roaring of the car coming down the highway as he stood across a railroad track at some undisclosed distance from the highway. The court held the witness was incompetent to give an estimate of the speed because he did not have a reasonable opportunity to judge the speed. *Id.* 206 Va. at 828-29, 147 S.E. 2d at 175.

More recently, the issue was addressed by the Indiana Court of Appeals in *Gates v. Rosenogle*, 452 N.E. 2d 467 (Ind. App. 1983). There defendant Gates, a layman, argued it was error for the trial court to exclude his opinion of the speed of the motorcycle, on which plaintiff was riding, from the sound of its engine. Gates did not offer himself as an expert; however, he had owned and ridden motorcycles and observed them racing. In affirming the trial court's ruling, the court stated:

> The general rule invests the trial court with the exercise of sound discretion in the admission or exclusion of marginally relevant evidence which has a potential for prejudice. . . . Accordingly, we will not reverse the trial court in the absence of an abuse of discretion, which requires a showing that the ruling was clearly against the logic and effect of the circumstances. . . . On the previously recited facts before us concerning both Gates' qualifications and the specific nature of the opinion sought, we cannot say it was an abuse of discretion to exclude the opinion. [Citations omitted.]

*Id.* at 471.

The reasoning set forth in *Gates* is applicable in the instant matter. By virtue of his profession as a truck driver and his experience with racing cars and work in a muffler shop, Raney was in a somewhat better position than the average person to judge the speed of a vehicle, solely on sound. He was not, however, tendered by plaintiff as an expert witness. In order to find error by the trial court in excluding Raney's opinion, we would have to find the trial court abused its discretion. We find no abuse of discretion and find no error.

This reasoning is applicable to plaintiff's witness Hill, who was also testifying as a layman, with some experience as a mechanic. The trial court did not abuse its discretion in not allow-

ing Hill's opinion testimony of actual speed. This ruling is correct even though Hill also caught a "glimpse of the lights as they went by." Our Supreme Court held that "[a]t night a witness may judge the speed of an automobile by the movement of its lights if his observation is for such a distance as to enable him to form an intelligent opinion." *Jones v. Horton*, 264 N.C. 549, 554, 142 S.E. 2d 351, 355 (1965). Hill's "glimpse of [the] lights . . . in between [his] neighbors' houses" did not permit observation for a distance long enough to form the basis for an intelligent opinion.

Plaintiff has further argued that the opinion testimony of actual speed based on sound alone is admissible under Rule 701 of the new Rules of Evidence (G.S. 8C-1, Rule 701, effective 1 July 1984), as being "*helpful* [to the jury] to the determination of a fact in issue." (Emphasis in original.) Rule 701 provides as follows:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

We agree that the opinion of actual speed from Raney and Hill would be "helpful" to the jury in determining the speed of defendants' vehicle. Such an opinion is admissible, however, *only* if it meets the test under clause (a): that it is "rationally based on the perception of the witness." This language does not change the existing law on opinions based on sound. "[R]ationally based on the perception of the witness" is merely another way of stating the general rule: "reasonable opportunity to observe the vehicle and judge its speed." *Nationwide Mutual Ins. Co. v. Chantos, supra; Johnson v. Douglas, supra.* If the perception is not adequate, there is no rational basis to support the opinion. Sound alone does not provide sufficient perception for a layman to have a rational basis for giving an opinion on actual speed.

Sound alone is sufficient for the witness to give his opinion of the speed of the vehicle in relative terms, such as "fast," "flying by," etc. Those opinions were permitted at trial. Raney was permitted to testify about "this loud vehicle . . . traveling at a high rate of speed." Hill was allowed to testify that he "heard a loud car go down the road at a high rate of speed. . . . It was loud like

a car going fast." Other witnesses who were near the scene of the accident and heard defendants' vehicle were permitted to give their opinions of the sound of defendants' vehicle. Mr. Raney's wife, Twyla, who was with Mr. Raney in his tractor-trailer and did not see the car or the accident, was permitted to testify that she "heard a car fly by" and that she "heard the bellowing of a car at a rapid speed." Joe Ashburn, whose garage is approximately a mile up Highway 601 from the accident, never saw the car or the accident and was allowed to testify, based on what he heard from a mile away, that the car was "constantly accelerating" and "sounded like it was flying." Jimmy Dean Foster, who lived on Highway 601, testified that he

> heard the tires squealing . . . . I heard the noise until it sounded like an explosion.

> At no time from the first time I heard the noise until I heard the explosion did the noise stop. The noise I heard was just like any car when you mash it down and hold it down. It's going to go until it blows or it's going to go until it stops. . . .

>         *     *     *     *

> I can describe the sound I heard from the time the car turned around there at the church. At first it was burning tires, squalling tires, taking off down the road, a loud noise, still the same noise until the explosion or whatever it was until it hit the other car. I did form an opinion about how fast the car was going. Not as far as miles per hour, not in terms of exact miles an hour. I don't think he didn't let off of it from the time he took off until the time of the impact.

Johnny Rummage, another resident on Highway 601, testified that he "heard a car go down the road at a high rate of speed, enormous rate of speed."

The opinions of the Raneys, Hill, Ashburn, Foster, and Rummage as to the speed of defendants' car, which were based on sound alone and expressed in relative terms, were properly admitted. Annot., 33 A.L.R. 3d 1405. Even if it had been error to exclude the opinion of Raney and Hill on the actual miles per hour, such error would have been harmless. There can be no doubt that plaintiff had conveyed to the jury that defendants' automobile

was traveling at an excessive rate of speed. When other evidence of the same import is admitted, error in the exclusion of evidence is harmless. *Medford v. Davis*, 62 N.C. App. 308, 302 S.E. 2d 838, *disc. rev. denied*, 309 N.C. 461, 307 S.E. 2d 365 (1983).

[2] We next consider plaintiff's assignment of error concerning the trial court's refusing to allow Trooper L. E. Johnson to give his opinion of the speed of the Reavis vehicle at the time of impact, even though the court had previously found Trooper Johnson to be an expert in "accident investigation." We find no merit to this assignment.

> As a general rule, a witness must confine his evidence to the facts. In certain cases, however, an observer may testify as to the results of his observations and give a shorthand statement in the form of an opinion as to what he saw. For example, he may observe the movement of an automobile and give an opinion as to its speed in terms of miles per hour. However, one who does not see a vehicle in motion is not permitted to give an opinion as to its speed. A witness who investigates but does not see a wreck may describe to the jury the signs, marks, and conditions he found at the scene, including damage to the vehicle involved. From these, however, he cannot give an opinion as to its speed. The jury is just as well qualified as the witness to determine what inferences the facts will permit or require. [Citation omitted.]

*Shaw v. Sylvester*, 253 N.C. 176, 180, 116 S.E. 2d 351, 355 (1960). *See also* 1 Brandis on North Carolina Evidence Sec. 131 (1982). Trooper Johnson did not see the accident happen. Rather, he based his opinion on his investigation of the accident scene. The trial court properly excluded his opinion of the speed of the Reavis automobile. In sum, with respect to the speed of a vehicle, the opinion of a lay or expert witness will not be admitted where he did not observe the accident, but bases his opinion on the physical evidence at the scene. North Carolina Rules of Evidence, Rule 702 does not change the rule of law.

[3] Plaintiff's next assignment of error is the trial court's refusing to allow Dale Raney and Twyla Raney to give their opinion as to the cause of the wreck, pursuant to North Carolina Rules of Evidence, Rule 701. Assuming *without deciding* that the questions asked were competent, the record does not show what their an-

swers would have been. Therefore, we cannot properly determine whether plaintiff was prejudiced by their exclusion. *Medford v. Davis, supra*, 62 N.C. App. at 311, 302 S.E. 2d at 840. It is appellant's burden to show "not only that error was committed but also that it was prejudicial." *Id.* This assignment of error is overruled.

Finally, we have reviewed plaintiff's assignments of error concerning the trial court's jury instructions and find these assignments of error to be without merit.

No error.

Chief Judge HEDRICK and Judge ARNOLD concur.