STATE OF NORTH CAROLINA v. JAMES DAVID PURDIE

No. 8813SC483

(Filed 4 April 1989)

1. **Automobiles § 112; Criminal Law § 50— automobile accident —homicide prosecution—accident reconstruction expert— admissibility of opinion testimony**

   In a prosecution for manslaughter arising from an automobile accident, the trial court did not err in allowing an expert in accident reconstruction to testify and give his opinions where three witnesses testified that defendant crossed the center line and struck an oncoming vehicle in its lane of travel; defendant and another witness testified that the

accident occurred when the oncoming car slid into defendant's lane; physical evidence was presented regarding damages to the vehicles, rotation and resting places of the vehicles, gouge marks in the pavement, and distribution of debris; and the expert was in a better position than the jury to interpret this evidence and to draw conclusions from it based on scientific principles. N.C.G.S. § 8C-1, Rules 702 and 704.

2. **Automobiles § 112; Criminal Law § 50.2— testimony of accident reconstruction expert—basis for opinions sufficient**

In a prosecution for manslaughter arising from an automobile accident, there was no merit to defendant's contention that an accident reconstruction expert had an insufficient basis for his opinions because he did not physically examine the scene or personally interview witnesses, since an expert witness need not testify from first-hand personal knowledge, so long as the basis for the expert's opinion is available in the record or on demand, and if, as in this case, the facts or data are of a type reasonably relied on by experts in the particular field in forming opinions or inferences upon the subject, then the facts or data need not be admissible in evidence. N.C.G.S. § 8C-1, Rule 703.

3. **Criminal Law § 50.2— accident reconstruction expert—information on which opinion based—admissibility of testimony**

An accident reconstruction expert could properly testify to the information he relied on in forming his opinion, even though that information was otherwise inadmissible, since it was of a type reasonably relied upon by experts in his field.

4. **Criminal Law § 87.2— leading question—no prejudice**

In a prosecution for manslaughter arising from an automobile accident, defendant was not prejudiced by a leading question which may have suggested to the jury that defendant's truck veered into the lane of oncoming traffic, since the witness had already testified that defendant's truck crossed over the center line and struck an oncoming vehicle; the context showed that the prosecutor was merely trying to ask the witness a permissible question with regard to a detour at the scene of accident; defense counsel used the same language when cross-examining two State's witnesses about the path of travel; and defendant was therefore not prejudiced by the leading question. Furthermore, defendant's argument in his brief did

not correspond with his assignment of error, and his assignment should therefore be deemed abandoned. Appellate Rule 28.

5. **Criminal Law § 73— hearsay statement of unavailable witness excluded — no error**

   In a prosecution for homicide arising from an automobile accident, the trial judge did not err in excluding a hearsay statement of an eyewitness who was unavailable for trial, since the statement that the victim's car appeared to hit a wet spot and may have crossed over the center line was speculative, no more probative on the point for which it was offered than any other evidence defendant could procure through reasonable efforts, and therefore inadmissible. N.C.G.S. § 8C-1, Rules 803(24) and 804(b)(5).

6. **Criminal Law § 86.6— defendant's statement made without benefit of Miranda warnings — statement suppressed — cross-examination about statement for impeachment purposes proper**

   In a prosecution for manslaughter arising from an automobile accident, the trial court did not err in allowing the State to cross-examine defendant about a statement he made to an officer one month after the collision, even though the statement had been suppressed on direct examination because the State failed to show that defendant had first been given a *Miranda* warning or that he fully understood his rights, since a statement taken in violation of a defendant's *Miranda* rights may nonetheless be used to impeach defendant's credibility if the statement was not involuntary and defendant testified at trial.

7. **Automobiles § 113.1— automobile accident — involuntary manslaughter — sufficiency of evidence**

   Evidence in an involuntary manslaughter case was sufficient to be submitted to the jury where it tended to show that defendant's blood alcohol concentration measured .181 two hours after the accident, thus demonstrating a willful violation of N.C.G.S. § 20-138.1; three eyewitnesses testified that the collision occurred in the victim's lane of travel; the opinion of an accident reconstruction expert was that the physical evidence supported their testimony; and the reasonable inference to be drawn from the State's evidence was that de-

fendant's drinking bore a causal relation to the collision and therefore to the other driver's death.

APPEAL by defendant from *Henry W. Hight, Jr., Judge*. Judgment entered 11 November 1987 in Superior Court, BLADEN County. Heard in the Court of Appeals 9 January 1989.

*Attorney General Lacy Thornburg, by Assistant Attorney General Linda Anne Morris, for the State.*

*James R. Melvin for the defendant.*

BECTON, Judge.

Defendant James David Purdie was convicted of involuntary manslaughter and sentenced to ten years imprisonment for his role in a head-on collision in which the driver of the other car was killed. Purdie appeals, contending that the trial judge erred by: 1) allowing an accident reconstruction expert to testify; 2) permitting the prosecutor to ask a witness a leading question on direct examination; 3) refusing to allow Purdie's former attorney to testify regarding a statement made to him by an unavailable witness; 4) allowing Purdie to be cross-examined about a statement made to a police officer one month after the collision; and 5) denying Purdie's motions to dismiss. We hold that Purdie's trial was without error.

I

The pertinent facts are as follows:

At 6:00 p.m. on 19 May 1986, Purdie was driving north on U.S. 701 near Elizabethtown when his Chevrolet pickup truck collided with a southbound Ford Fiesta. The accident occurred a short distance after the northbound traffic merged and detoured to the left due to highway construction. Upon impact, both vehicles spun and came to rest in the Fiesta's lane. Most of the debris from the collision was in the Fiesta's lane, and gouge marks caused by metal striking the road dented the pavement in that lane. The driver of the Fiesta died at the scene, and his passenger was seriously injured. Purdie also suffered injuries.

Purdie had been drinking. The police officer on the scene, Officer Paschal, smelled alcohol on Purdie's breath and found a can of beer in the pickup truck. Two hours after the accident, Purdie's blood alcohol concentration measured .181.

STATE v. PURDIE

[93 N.C. App. 269 (1989)]

At Purdie's trial on charges of felony death by vehicle and involuntary manslaughter, three eyewitnesses testified for the State. Two of the witnesses had been travelling in a crew cab behind the Fiesta. Both testified that Purdie was travelling four to five feet over the center line, in the Fiesta's lane, when the vehicles collided. They also testified that the Fiesta remained in its proper lane until the collision. The third witness had been driving in front of Purdie's pickup. He testified that he noticed nothing unusual about the Fiesta as he passed it, and that he looked in his rearview mirror when he heard the crash and saw the pickup in the Fiesta's lane. Each of these witnesses denied seeing a blue car; Purdie and another defense witness would later testify that the Fiesta passed a blue car just before the collision.

Over objection, an accident reconstruction expert also testified for the State. The expert was a civil engineer who had extensive experience in accident reconstruction, having investigated approximately 1,000 automobile accidents since 1969. The expert based his testimony on information he gleaned from the police accident report, an interview with the investigating officer, photographs of the accident scene, an aerial photograph of the area, review of a transcript of a State witness's testimony, and listening to the witnesses at trial. He stated:

> [I]n my opinion it would be totally inconsistent with the laws of physics for this wreck to happen in the right-hand or northbound lane, with the contact areas that were made between the two vehicles, for them just to slide sideways and come to rest over in the southbound lane. Conversely, all the evidence, the debris, the final positions and rotation of the vehicles, is consistent with what I heard the witnesses testify to as the direction of travel and what occurred.

The expert gave his opinion—based, he said, on the rotation and final resting position of the cars, the location of the debris, the gouge marks in the pavement, and the contact between the cars— that the accident occurred in the Fiesta's lane.

Defense witnesses gave a different account of the accident. An eyewitness for the defense testified that as he travelled south, the Fiesta passed his car and slid into Purdie's lane. (On cross-examination, this witness admitted a prior conviction for giving false information to a police officer.) Purdie took the stand and testified that the Fiesta passed a blue car and then slid into the

northbound lane. Purdie also tried, without success, to have his former attorney recount an unavailable eyewitness's statement that the Fiesta "may have crossed" the center line.

Purdie did not deny that he had been drinking, although he did deny that the can of beer found in his truck was open and still cold, as Officer Paschal had testified. Purdie testified that he drank four beers between 7:30 a.m. and 2:30 p.m. the day of the accident. Over objection, the State was permitted to cross-examine Purdie about his statement to Officer Paschal, made one month after the accident, that he had consumed a six-pack of beer that day. Purdie first admitted making the statement, but later qualified that answer. Purdie also admitted a prior conviction for reckless driving after drinking, and admitted that he had been charged and convicted for another DWI incident while the present case was pending.

Purdie was found guilty of involuntary manslaughter and was sentenced to ten years imprisonment. He appeals, raising seventeen assignments of error.

## II

[1] Eleven of Purdie's assignments of error concern the testimony of the accident reconstruction expert. Specifically, Purdie contends that it was error to permit the expert to testify as to how the accident occurred and what the investigating officer told him about the accident scene. He further contends that it was error to allow the expert to give an opinion as to: the vehicles' original lanes of travel; the vehicles' speeds; the vehicles' direction of travel; the rotation of the vehicles; the position of the vehicles after the accident; the gouge marks on the road; the cause of the gouge marks; the consistency of the photographs with the State's witnesses' testimony; and the lane in which the accident occurred. Essentially, Purdie argues that the expert's testimony and opinions were inadmissible. Purdie does not challenge the witness's qualifications as an expert in accident reconstruction.

A. *Expert Testimony and Opinions Must Be Helpful to Trier of Fact*

Expert *testimony* is admissible when it "can assist the jury to draw certain inferences from facts because the expert is better qualified" than the jury to interpret the information presented. *State v. Bullard*, 312 N.C. 129, 139, 322 S.E. 2d 370, 376 (1984).

The test for admissibility of expert testimony is simply "whether the jury can receive 'appreciable help' from the expert witness." *State v. Knox*, 78 N.C. App. 493, 495, 337 S.E. 2d 154, 156 (1985). A trial judge has "wide latitude of discretion" when determining the admissibility of expert testimony. *Id.*

An expert may give an *opinion* "[i]f the [expert's] scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." N.C. Gen. Stat. Sec. 8C-1, R. Evid. 702 (1988). Opinion testimony is no longer inadmissible simply because it embraces an ultimate issue to be decided by the jury. N.C. Gen. Stat. Sec. 8C-1, R. Evid. 704 (1988). However, expert opinion is not helpful—and therefore is not admissible—if it is impossible for anyone, expert or nonexpert, to draw a particular inference from the evidence. *See, e.g., State v. Jackson*, 320 N.C. 452, 460, 358 S.E. 2d 679, 683 (1987) (jury in as good a position as expert to determine whether defendant was "probably" father of rape victim's baby); *Shaw v. Sylvester*, 253 N.C. 176, 180, 116 S.E. 2d 351, 355 (1960) (physical evidence at scene made it impossible for any non-observer to determine who had been driving car; expert opinion properly excluded).

Here, three witnesses testified that Purdie crossed the center line and struck the Fiesta in the southbound lane, while Purdie and another witness testified that the accident occurred when the Fiesta slid into the northbound lane. Physical evidence was presented regarding damage to the vehicles, rotation and resting places of the vehicles, gouge marks in the pavement, and distribution of debris. We hold that the expert was in a better position than the jury to interpret this evidence and to draw conclusions from it based upon scientific principles. Because the expert's testimony and opinions could be of appreciable help to the jury, the trial judge did not abuse his discretion in admitting that testimony.

B. *Basis of Expert Opinion: Information Reasonably Relied Upon by Experts in Field*

[2] Purdie's central challenge to the expert's opinion testimony is that the expert had an insufficient basis for his opinions because he did not physically examine the scene or personally interview witnesses.

Purdie relies upon *Hicks v. Reavis*, 78 N.C. App. 315, 337 S.E. 2d 121 (1985), *cert. denied*, 316 N.C. 553, 344 S.E. 2d 7 (1986),

to contend that the physical evidence made known to the expert provided an insufficient basis upon which to form an opinion. In *Hicks*, this court held that neither an expert nor a non-expert may give an opinion as to the speed of a vehicle if that opinion is based upon physical evidence obtained at the scene rather than personal observation. *Id.* at 323, 337 S.E. 2d at 126.

Purdie's reliance on *Hicks* is misplaced. *Hicks* itself was based upon *Shaw v. Sylvester*, 253 N.C. 176, 116 S.E. 2d 351 (1960), a case decided 24 years before the new rules of evidence were adopted. The view that experts may not rely upon skid marks, vehicle damage, rotation and resting positions of vehicles, and other physical evidence to give an opinion as to speed has been rejected by the majority of jurisdictions deciding this question, *see, e.g.,* 29 A.L.R. 3d 248 (1970) (Supp. 1988); 93 A.L.R. 2d 287 (1964) (Later Case Serv. 1983) (Supp. 1988), and has been challenged by Professor Brandis. *See* Brandis, 1 *Brandis on North Carolina Evidence*, Sec. 131, n.69 (3d ed. 1988) ("this writer has always believed that qualified expert opinion about such matters, based upon observation of physical facts, should be admitted"). More importantly, the holding in *Hicks* is limited to opinions regarding *speed*; it does not apply to opinions concerning other elements of an accident. Despite Purdie's assertions to the contrary, the expert in the case before us gave no opinion as to the speed of either vehicle.

It is well settled that an expert witness need not testify from firsthand personal knowledge, so long as the basis for the expert's opinion is available in the record or on demand. *See, e.g., State v. Smith*, 315 N.C. 76, 101, 337 S.E. 2d 833, 849 (1985); *Thompson v. Lenoir Transf. Co.*, 72 N.C. App. 348, 350, 324 S.E. 2d 619 (1985). Rule 703 provides that

> The facts or data . . . upon which an expert bases an opinion or inference may be those perceived by *or made known to him* at or before the hearing. *If of a type reasonably relied upon by experts in the particular field* in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

N.C. Gen. Stat. Sec. 8C-1, R. Evid. 703 (1988) (emphasis added).

We hold that the expert's opinion was based on information reasonably relied upon by experts in the field of accident reconstruction. *See, e.g.,* cases cited in 66 A.L.R. 2d 1048 (1959) (Later Case

Serv. 1984) (Supp. 1988); 38 A.L.R. 2d 13 (Later Case Serv. 1977) (Supp. 1988); 49 A.L.R. Fed. 363 (1980) (Supp. 1988) (trend in law, particularly among jurisdictions that have adopted federal rules of evidence, is to permit qualified accident reconstruction expert to base opinions about matters surrounding an accident upon physical evidence). *Cf. McKay v. Parham*, 63 N.C. App. 349, 353, 304 S.E. 2d 784, 787 (1983) (accident reconstruction expert permitted to answer hypothetical questions regarding post-collision movement of cars; testimony based upon application of laws of physics to physical evidence at scene). The fact that an expert's opinion is not based on personal observation of the accident scene affects the *weight* to be accorded the testimony, not its admissibility.

C. *Inadmissible Evidence May Form Basis of Opinion*

[3] We reject Purdie's contention that it was error to permit the expert witness to testify about what Officer Paschal told him about the accident scene and the photographs on the ground that the officer's statements were inadmissible hearsay. If an expert's opinion is admissible, the expert may testify to the information he relied on in forming it for the purpose of showing the basis of his opinion, even when that information would otherwise be inadmissible, so long as the information is of a type reasonably relied upon by experts in his field. *See, e.g., State v. Allen*, 322 N.C. 176, 184, 367 S.E. 2d 626, 630 (1988) (applying R. Evid. 703). Moreover, out-of-court statements offered to show the basis for the expert's opinion are not hearsay. *State v. Huffstetler*, 312 N.C. 92, 106-07, 322 S.E. 2d 110, 120 (1984), *cert. denied*, 471 U.S. 1009, 85 L.Ed. 2d 169 (1985).

In light of the foregoing, we overrule each of Purdie's assignments of error relating to the expert's testimony.

III

[4] We next consider Purdie's contention that the trial judge erred by overruling his objection to the following question asked by the State on direct examination: "All right. He had to veer to the left —." The question, cut off by Purdie's objection, was neither completed nor answered. Purdie argues that this was a leading question that impermissibly suggested to the jury that the pickup truck veered into the Fiesta's lane. We overrule this assignment of error for two reasons.

First, although Purdie correctly asserts that the challenged question was leading, he fails to show prejudice. The witness had *already testified* that Purdie's truck crossed over the center line and struck the Fiesta. Moreover, the context of preceding and subsequent questions shows that the prosecutor was merely trying to ask the witness whether northbound drivers on U.S. 701 had to move to the left at the detour. Defense counsel used the same language when cross-examining two State witnesses about the path of northbound travel. No abuse of discretion occurred here. *See State v. Riddick*, 315 N.C. 749, 756, 340 S.E. 2d 55, 59 (1986).

Second, Purdie's objection and assignment of error were directed to the witness's purported "unresponsive answer"; however, the accompanying argument in the brief concerns the leading nature of the question by the prosecutor. When, as here, the argument in the brief does not correspond to the assignment of error, that assignment should be deemed abandoned under Rule 28 of the Rules of Appellate Procedure. *Accord Raleigh-Durham Airport Authority v. King*, 75 N.C. App. 57, 63, 330 S.E. 2d 622, 626 (1985).

IV

**[5]** Purdie next contends that the trial judge erred in excluding the hearsay statement of an eyewitness who was unavailable for trial. We disagree.

Purdie sought to introduce his former attorney's summary of an interview with an eyewitness who had been driving behind Purdie at the time of the accident. The witness told Purdie's former attorney that the Fiesta "appeared to hit a wet spot" and "may have crossed over" the center line. Attempts to locate the witness before trial were unsuccessful.

After *voir dire* examination of the former attorney, the trial judge ruled that this hearsay evidence was inadmissible under the residual exceptions to the hearsay rule found in N.C. Gen. Stat. Sec. 8C-1, R. Evid. 803(24) and R. Evid. 804(b)(5). Applying the six-prong test set out in *Smith*, the judge found that the statement failed the test's fifth prong because the statement was not more probative on the point for which it was offered than any other evidence Purdie could procure through reasonable efforts. *See Smith*, 315 N.C. at 96, 337 S.E. 2d at 846. The judge reasoned, first, that the eyewitness's statement would have been inadmissible even had he appeared at trial because the statement was speculative,

and second, that several other eyewitnesses were available to testify about the path of the vehicles.

We agree that the statement that the Fiesta *appeared* to hit a wet spot and *may* have crossed over the center line was (1) inadmissible, *see* N.C. Gen. Stat. Sec. 8C-1, R. Evid. 401 (1988), and (2) no more probative of the issue than the testimony of the other defense witnesses. Accordingly, this assignment of error is overruled.

V

[6] Purdie contends that it was error to allow the State to cross-examine him about a statement he made to Officer Paschal one month after the collision because, he argues, the statement was taken in violation of his *Miranda* rights.

A *voir dire* examination of Officer Paschal was conducted to determine the admissibility of the statement. Paschal testified that he happened to be at the Magistrate's office on 13 June 1986 when Purdie was brought before the Magistrate on a warrant for felony death by vehicle. He testified that he asked Purdie "How are you doing?" Purdie answered "[a]ll right" and then summoned Paschal over to him. Paschal testified that Purdie said "I'm going to tell you the truth. I had been drinking that day. I drank about a six-pack on the way. . . . I hadn't drunk anything since that day. I've learned my lesson. And I'm sorry for what happened to those people." The trial judge excluded this evidence, finding that the State failed to show that Purdie had first been given a *Miranda* warning or that he fully understood his rights.

The State later attempted to use the statement to impeach Purdie regarding his testimony that he had only four beers the day of the accident. After a *voir dire* examination, the judge ruled that Purdie had not been interrogated and that he made the statement freely and voluntarily. The judge allowed the State to question Purdie about the statement.

Purdie argues on appeal that the statement could not come out on cross-examination since it had already been suppressed on direct examination of Paschal. We disagree. A statement taken in violation of a defendant's *Miranda* rights may nonetheless be used to impeach the defendant's credibility if (1) the statement was not involuntary, and (2) the defendant testified at trial. *Harris v. New York*, 401 U.S. 222, 224, 28 L.Ed. 2d 1, 4 (1971). " 'The

shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.' " *State v. Bryant*, 280 N.C. 551, 555-56, 187 S.E. 2d 111, 114 (1972), *cert. denied*, 409 U.S. 995, 34 L.Ed. 2d 259 (1972) (quoting *Harris*, 301 U.S. at 226, 28 L.Ed. 2d at 5). Purdie's reliance on *State v. Butler*, 269 N.C. 483, 153 S.E. 2d 70 (1967), decided before both *Harris* and *Bryant*, is misplaced.

## VI

We do not reach Purdie's contention that the trial judge erred in denying his motion to dismiss at the close of the State's evidence. Purdie is foreclosed from appealing denial of that motion since he subsequently introduced his own evidence. *See* N.C. Gen. Stat. Sec. 15-173 (1983). *Accord State v. Bruce*, 315 N.C. 273, 280, 337 S.E. 2d 510, 515 (1985). However, we do consider Purdie's next contention that the judge erred in denying his motion to dismiss made at the close of all the evidence.

[7] On appeal from denial of a motion to dismiss, the State is entitled to every reasonable inference that can be drawn from its evidence. *State v. Williams*, 90 N.C. App. 120, 122, 367 S.E. 2d 345, 346 (1988). We conclude that the State presented substantial evidence of each of the elements of the crimes charged, namely (1) willful violation of N.C. Gen. Stat. Sec. 20-138.1, and (2) a causal link between that violation and the death of the other driver. *State v. McGill*, 314 N.C. 633, 637, 336 S.E. 2d 90, 92 (1985). *See also State v. Williams*, 90 N.C. App. 614, 621, 369 S.E. 2d 832, 837 (1988), *disc. rev. denied*, 323 N.C. 369, 373 S.E. 2d 555 (1988) (offense of felony death by vehicle requires same elements as involuntary manslaughter). First, Purdie's .181 blood alcohol concentration unquestionably demonstrated a willful violation of Section 20-138.1. Second, it is common knowledge that intoxication impairs the ability to drive. Three eyewitnesses testified that the collision occurred in the Fiesta's lane, and the opinion of the accident reconstruction expert was that the physical evidence supported their testimony. The reasonable inference to be drawn from the State's evidence was that Purdie's drinking bore a causal relation to the collision, and, therefore, to the other driver's death. The case was properly taken to the jury.

## VII

We hold that the trial of defendant James David Purdie was without prejudicial error.

No error.

Judges WELLS and JOHNSON concur.