JOSIE McILWAN BLACKWELL, PLAINTIFF v. TIMOTHY ALLEN HATLEY, MIKE MAHALEY IN HIS OFFICIAL CAPACITY, D. REED LINN IN HIS OFFICIAL CAPACITY, STEVE ROWLAND IN HIS OFFICIAL CAPACITY, THE TOWN OF LANDIS, PARKDALE MILLS INCORPORATED, ALLIANCE REAL ESTATE III, INC., AND JOHN DOE, DEFENDANTS

No. COA09-298 and COA09-299

(Filed 2 February 2010)

**1. Motor Vehicles— negligence—no genuine issue of material fact—summary judgment proper**

In a negligence action arising out of an automobile accident, the trial court did not err in granting summary judgment in favor of defendant Hatley as there was no genuine issue of material fact

regarding whether Hatley was driving in excess of the legal speed limit at the time of the accident. A supplemental accident report offered by plaintiff to show Hatley's speed was inadmissible as neither of the officers who prepared the report witnessed the accident. Furthermore, testimony from plaintiff's "expert" witness regarding Hatley's speed was inadmissable as the witness did not observe the accident but based his opinion on the physical evidence at the scene of the accident. As the accident occurred prior to 1 December 2006, N.C.G.S. § 8C-1, Rule 702(i) did not apply.

**2. Motor Vehicles— negligence—no genuine issue of material fact—summary judgment proper**

The trial court did not err in granting summary judgment in favor of defendant Hatley on plaintiff's claim that Hatley negligently maintained his vehicle as there was no genuine issue of material fact regarding whether Hatley had functioning brakes on the trailer he was hauling at the time of the accident. A notation in a police report that the trailer did not have brakes was based on conjecture and speculation and was inadmissible.

**3. Motor Vehicles— contributory negligence—no genuine issue of material fact—summary judgment proper**

The Court of Appeals did not address plaintiff's argument that there were genuine issues of material fact concerning whether plaintiff was contributorily negligent as plaintiff failed to offer admissible evidence raising any genuine issue of material fact concerning defendant Hatley's negligence.

**4. Motor Vehicles— negligence—legal duty—no genuine issue of material fact—summary judgment proper**

The trial court did not err in granting summary judgment in favor of the Town of Landis and three municipal employees on plaintiff's negligence claim as plaintiff failed to produce any evidence that these defendants owed a legal duty to regulate the design, maintenance, site distance, speed limit, or any other features of S. Main Street, the site of the automobile accident at issue.

Appeal by Plaintiff from judgments entered 11 September 2008 by Judge Larry G. Ford in Rowan County Superior Court. Heard in the Court of Appeals 17 September 2009.

*Gray, Johnson and Lawson, LLP, by Sharon M. Lawson-Davis, for Plaintiff.*

*York Williams & Lewis, L.L.P., by Thomas E. Williams, and David R. DiMatteo, for Defendant Timothy Allen Hatley.*

BEASLEY, Judge.

Plaintiff (Josie Blackwell) appeals from entry of summary judgment on her claims against Defendants. We affirm.

This appeal arises from an automobile collision in 2004 in the Town of Landis, Rowan County, North Carolina. At around 1:30 p.m. on 21 May 2004, Plaintiff was driving west on E. Round Street. Her son, Gordon Blackwell (Gordon) was a passenger in the car. Defendant Timothy Hatley (Hatley) was driving north on S. Main Street in a pick-up truck hauling a trailer. At the intersection of E. Round Street and S. Main Street, a stop sign required traffic traveling on E. Round Street to stop. Plaintiff reached the intersection of E. Round Street and S. Main Street and stopped at the stop sign. Plaintiff looked to the left, while Gordon checked for traffic coming from the right. When Gordon told Plaintiff that the road was clear from the right, Plaintiff started to drive across S. Main Street. Plaintiff's car was struck by Hatley's vehicle as she drove across S. Main Street, and Plaintiff suffered serious injuries in the collision.

On 21 May 2007 Plaintiff filed suit against the following defendants: Hatley, the driver of the car that struck her; the Town of Landis; municipal employees Mike Mahaley, D. Reed Linn, and Steve Rowland, in their official capacities (Landis Defendants); Parkdale Mills Incorporated, Alliance Real Estate III, Inc., and "John Doe." In her complaint, Plaintiff generally alleged that (1) Hatley was negligent in his maintenance and operation of his vehicle; (2) Hatley was employed by "John Doe," who was liable for Hatley's negligence on a theory of *respondeat superior*; (3) Parkdale Mills and Alliance Real Estate negligently allowed vegetation to obscure Plaintiff's view of S. Main Street, and; (4) the Town of Landis and its employees negligently failed to enforce a town ordinance requiring property owners to keep vegetation trimmed, and negligently failed to establish the proper road design, speed limit, or traffic control devices on S. Main Street. On 28 August 2008 Plaintiff dismissed her claims against Parkdale Mills, and on 11 November 2008 Plaintiff dismissed her claims against John Doe and Alliance Real Estate.

On 23 January 2008 the Landis Defendants moved for summary judgment, and on 11 August 2008 Hatley moved for summary judgment. On 11 September 2008 the trial court granted summary judgment in favor of Hatley and the Landis Defendants. In COA09-298, Plaintiff appeals from summary judgment granted in favor of Hatley; in COA09-299, Plaintiff appeals summary judgment granted for the Landis Defendants. Because both appeals arise from a common set of facts, we consolidate the two cases on appeal to render this single opinion on all issues.

## Standard of Review

The standard of review for summary judgment is well-settled:

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the non-moving party. If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial."

*Metcalf v. Black Dog Realty, LLC*, —— N.C. App. ——, ——, —— S.E.2d ——, —— (COA08-1561, filed 3 November 2009) (quoting *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008)).

Under N.C. Gen. Stat. § 1A-1, Rule 56(e) (2009):

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

BLACKWELL v. HATLEY

[202 N.C. App. 208 (2010)]

" 'The converse of this requirement is that affidavits or other material offered which set forth facts which would not be admissible in evidence should not be considered when passing on the motion for summary judgment.' " *Wein II, LLC v. Porter*, —— N.C. App. ——, ——, 683 S.E.2d 707, 711 (2009) (quoting *Strickland v. Doe*, 156 N.C. App. 292, 295, 577 S.E.2d 124, 128 (2003)). " 'Similarly, a trial court may not consider that portion(s) of an affidavit which is not based on an affiant's personal knowledge.' " *Id.* (quoting *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 776 (1998)). Moreover:

> "Where both competent and incompetent evidence is before the trial court, we assume that the trial court, when functioning as the finder of facts, relied solely upon the competent evidence and disregarded the incompetent evidence." When sitting without a jury, the trial court is able to eliminate incompetent testimony, and the presumption arises that it did so.

*In re Foreclosure of Brown*, 156 N.C. App. 477, 487, 577 S.E.2d 398, 405 (2003) (quoting *In re Cooke*, 37 N.C. App. 575, 579, 246 S.E.2d 801, 804 (1978)).

## Appeal from Summary Judgment for Hatley

**[1]** Plaintiff argues that the trial court erred by granting summary judgment for Hatley, on the grounds that there are genuine issues of material fact regarding Hatley's negligence. We disagree.

" 'The essential elements of any negligence claim are the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff.' " *Harris v. Daimler Chrysler Corp.*, 180 N.C. App. 551, 555, 638 S.E.2d 260, 265 (2006) (quoting *Peace River Electric Cooperative v. Ward Transformer Co.*, 116 N.C. App. 493, 511, 449 S.E.2d 202, 214 (1994)).

It is undisputed that Hatley was driving north on S. Main Street when he collided with Plaintiff at the intersection of E. Round Street and S. Main Street, and that the speed limit at the intersection was 35 mph. Plaintiff first argues that the evidence raises genuine issues of material fact regarding whether Hatley was driving in excess of the legal speed limit at the time of the accident. We disagree.

"It is well settled in North Carolina that a person of ordinary intelligence and experience is competent to state his opinion as to the

speed of a vehicle when he has had a reasonable opportunity to observe the vehicle and judge its speed." *Insurance Co. v. Chantos*, 298 N.C. 246, 250, 258 S.E.2d 334, 336 (1979). In the instant case, Hatley testified that he was driving 35 mph as he approached the intersection. Adam Pethel and James Bouchard each testified that he did not know the parties, that he had been across the street and seen the accident, that Hatley was driving no more than 35 mph, and that Plaintiff pulled out in front of Hatley. This constitutes the only admissible evidence of Hatley's driving speed, and we conclude it does not raise an issue of fact regarding whether Hatley was speeding.

We have considered and rejected Plaintiff's arguments to the contrary. Plaintiff directs our attention to a supplemental accident report, which lists Hatley's speed as 48 mph, and asserts that this constitutes evidence of Hatley's speed. The supplemental report, which was prepared by Officer Kimball of the Landis Police Department, amended Kimball's original report which listed Hatley's speed at 35 mph. Kimball's revised estimate of Hatley's speed was based on calculations performed by Landis Police Department Officer Phillips. It is undisputed that neither of these officers saw the accident. Therefore, the estimates of Hatley's speed contained in the accident report are inadmissible:

> Our State Supreme Court has held in several cases that while it is competent for an investigating officer to testify as to the condition and position of the vehicles and other physical facts observed by him at the scene of an accident, his testimony as to his conclusions from those facts is incompetent.

*State v. Wells*, 55 N.C. App. 311, 314, 278 S.E.2d 527, 529 (1981). Plaintiff cites no authority supporting admission of the accident report's estimate of Hatley's speed, and we find none. This assignment of error is overruled.

Plaintiff also asserts that testimony from her "expert" witness, Ryan McMahan, created a genuine issue of material fact regarding Hatley's speed. We disagree.

McMahan was deposed before the summary judgment hearing, presumably as an expert in "accident reconstruction." However, when he was deposed, McMahan was never tendered as an expert witness and was not asked to identify an area of professional expertise. Nor did McMahan's testimony about his educational background—undergraduate degree in mechanical engineering with minors in graphic communications and business, and testimony that

he had passed a "fundamental" engineering exam—necessarily establish his expertise in any particular area. In addition, when asked whether he had performed an accident reconstruction, he replied that "[he] did to an effect, depending upon your definition of an accident reconstruction[,]" but did not provide a professional or expert definition of accident reconstruction. However, assuming, *arguendo*, that McMahan was properly tendered as an expert in accident reconstruction, we conclude that his testimony about Hatley's driving speed was inadmissible.

McMahan testified that Plaintiff hired him in 2007 to "look into the accident reconstruction, automobile side" of the collision between Hatley and Plaintiff. McMahan testified that he had assigned a "drag factor" to both vehicles, based on drag factors that are "[g]enerally accepted for an average of what a vehicle of that type will do" but gave no explanation of what he meant by a vehicle of "that type," or whether he meant vehicles of a certain make, year, weight, or otherwise. McMahan calculated the weight of Hatley's truck and trailer, using data "specifically for that truck" and "data on that specific trailer" as well as Hatley's deposition testimony about materials he was hauling. He reviewed the accident report and a video of the accident scene and used the images in the video and other photographs to calculate the length of the tire skid marks left in the accident. He also calculated a change in velocity of both vehicles, based on his estimated weights of each. He applied an acceleration factor to Plaintiff's vehicle that was a "generally accepted value for an average acceleration of your average vehicle."

McMahan testified that, in his opinion, Hatley was driving between 53 and 62 mph when he began to brake. However, McMahan did not witness the accident. He testified that his opinion as to Hatley's speed was based on photographic and video evidence of skid marks, his assigned acceleration and deceleration factors, estimated weights of the vehicles, assumptions about where Plaintiff stopped her car in relation to the intersection, and his estimates of the sight distance from the intersection. The Supreme Court of North Carolina stated in *Shaw v. Sylvester*, 253 N.C. 176, 180, 116 S.E.2d 351, 355 (1960):

[O]ne who does not see a vehicle in motion is not permitted to give an opinion as to its speed. A witness who investigates but does not see a wreck may describe to the jury the signs, marks, and conditions he found at the scene, including damage to the vehicle involved. From these, however, he cannot give an opinion

as to its speed. The jury is just as well qualified as the witness to determine what inferences the facts will permit or require.

In *State v. Hazelwood*, 187 N.C. App. 94, 652 S.E.2d 63 (2007), the defendant appealed from a conviction arising from an accident occurring in October, 2004. This Court quoted *Shaw*, and noted that:

The General Assembly recently enacted N.C. Gen. Stat. § 8C-1, Rule 702(i) . . . which overrules *Shaw* and allows [a] witness qualified as an expert in accident reconstruction . . . [to] give an opinion as to the speed of a vehicle even if the witness did not observe the vehicle moving. This new evidentiary rule only applies to offenses committed on or after December 1, 2006. . . . Therefore, the new statute is inapplicable to the case before us, and the *Shaw* rule controls our decision here.

*Id.* at 100 n.1, 652 S.E.2d at 67 n.1 (internal quotations omitted). In the instant case, as in *Hazelwood*, the accident occurred prior to the change in Rule 702 and, accordingly, we apply the rule stated in *Shaw*, that " 'with respect to the speed of a vehicle, the opinion of a lay or expert witness will not be admitted where he did not observe the accident, but bases his opinion on the physical evidence at the scene.' " *Marshall v. Williams*, 153 N.C. App. 128, 135, 574 S.E.2d 1, 5 (2002) (quoting *Hicks v. Reavis*, 78 N.C. App. 315, 323, 337 S.E.2d 121, 126 (1985)). We conclude that, under *Shaw* and similar cases, McMahan's testimony about Hatley's driving speed was inadmissible.

Plaintiff, however, argues that the testimony was admissible under the holding of *Hoffman v. Oakley*, 184 N.C. App. 677, 647 S.E.2d 117, *disc. review denied,* 361 N.C. 692, 652 S.E.2d 264 (2007). We disagree. In *Hoffman*, the appellant argued that the trial court "erred by admitting the testimony of the . . . accident reconstruction expert, which the [appellants] contend, constituted improper expert testimony regarding the speed [appellant] was traveling." *Id.* at 679, 647 S.E.2d at 119. The Court noted that "unless an accident reconstruction expert actually observed the accident, the expert may not testify as to the speed a vehicle was traveling." *Id.* at 681, 647 S.E.2d at 121 (citing *Van Reypen Assocs., Inc. v. Teeter*, 175 N.C. App. 535, 542, 624 S.E.2d 401, 405 (2006)). *Hoffman's* accident reconstruction expert performed several "skid tests" using a car of the same make and model as the one in the collision, which the expert considered to be a "sister or clone" of the one in the accident. Using this car, the expert determined the braking distance of such a car at varying

speeds. On appeal, Defendants argued that "this testimony, when viewed in conjunction with that of a responding police officer who found skid marks . . . 80 feet in length, was merely 'evidence of speed through the 'back door.' " *Id.* This Court held:

> [T]he restriction on expert testimony set out in *Shaw* "is limited to opinions regarding speed; it does not apply to opinions concerning other elements of an accident." Thus, an expert's testimony is properly admitted when he gives no opinion as to the actual speed of a vehicle. Here, [the witness] never gave an opinion as to the speed that [defendant] was traveling. He used his scientific expertise to perform an experiment that demonstrated stopping distances at various speeds. . . . The trial court, therefore, did not err in admitting [the expert's] testimony.

*Id.* at 682, 647 S.E.2d at 122 (quoting *State v. Purdie*, 93 N.C. App. 269, 276, 377 S.E.2d 789, 793 (1989)).

> The case of *Shaw v. Sylvester*, 253 N.C. 176, 116 S.E.2d 351 (1960), . . . stated: "The qualified expert, the nonobserver, may give an opinion in answer to a proper hypothetical question in matters involving science, art, skill and the like . . . . An automobile, like any other moving object, follows the laws of physics[.]" [The expert witness] properly answered hypothetical questions here and applied the laws of physics to the post-collision movement of the two cars.

*McKay v. Parham*, 63 N.C. App. 349, 353, 304 S.E.2d 784, 786-87 (1983).

The instant case is easily distinguished from *Hoffman*. McMahan repeatedly testified to his opinion of Hatley's driving speed, which was inadmissible. Moreover, unlike the expert in *Hoffman*, McMahan <u>did not</u> offer testimony about the results of tests on a similar vehicle; his testimony was specifically focused on <u>Hatley's</u> speed, not general principles. This assignment of error is overruled.

[2] Plaintiff also argues that the evidence raised a genuine issue of material fact regarding whether Hatley had functioning brakes on the trailer he was hauling. Hatley testified that on 21 May 2004 he was hauling a Butler brand trailer which was registered with the North Carolina Department of Motor Vehicles. The trailer had electric brakes that were connected to the truck's braking system by means of an electric plug in the truck. Hatley testified that as far as he knew the brakes were in good working order. He also testified that he could

tell whether the brakes were performing well because "you can feel it when you put on the brakes whether that trailer's stopping or not." We conclude that Hatley's testimony did not raise any issue of fact about the condition of the brakes on his trailer.

Plaintiff asserts that there was evidence that there were no brakes on the trailer, based on a notation in Officer Kimball's accident report that the trailer did not have brakes. However, Kimball testified that the only basis for this opinion was that he believed that "[u]sually, there's a little box up on the front end of the tongue, that's where the electric brakes are" and that, when Kimball did not see an external box, he assumed that the trailer lacked brakes. Kimball admitted that he did not go inside the truck cab, did not ask Hatley about the trailer's brakes, did not test the brake pedal, and did not look under the trailer for wiring. We conclude that the notation in Kimball's report was based on mere speculation and, as such, is inadmissible.

To prevail on their claim that Hatley negligently failed to maintain the brakes on his trailer, Plaintiff was " 'required to offer legal evidence tending to establish beyond mere speculation or conjecture every essential element of negligence, and upon failure to do so, [summary judgment] is proper.' " *Young v. Fun Services-Carolina, Inc.*, 122 N.C. App. 157, 162, 468 S.E.2d 260, 263 (1996) (quoting *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 68, 414 S.E.2d 339, 342, 345 (1992)) (other citations omitted). In the instant case, Plaintiff failed to produce any competent evidence raising a material issue of fact about the brakes on Hatley's trailer. This assignment of error is overruled.

Plaintiff also asserts that the evidence raised genuine issues of material fact regarding whether Hatley negligently failed to yield the right-of-way to Plaintiff, or failed to reduce his speed as he approached the intersection. However, these contentions rest upon McMahan's testimony about Hatley's driving speed, which we have already determined to be inadmissible. These assignments of error are overruled.

In addition, Plaintiff argues that issues of fact are raised by the testimony of Plaintiff and Gordon. Neither witness saw Hatley's truck before the accident. Gordon testified that when Plaintiff stopped at the stop sign, she looked left while he looked right. After assuring Plaintiff that the road was clear from the right, Gordon bent down to retrieve his wallet from the floor, and did not see the collision.

Plaintiff testified that she stopped at the corner, looked first to the left and then to the right, and proceeded into the intersection. She did not see Hatley before the crash, and remembered nothing after starting across the street. Accordingly, Plaintiff's and Gordon's testimony about such matters as Hatley's speed is based on conjecture and speculation, and is inadmissible.

Plaintiff asserts that there are issues of fact as to the credibility of Hatley, Pethel, and Bouchard. However, no competent evidence is in conflict, and thus no issues of fact depend on credibility determinations. This assignment of error is overruled.

[3] Finally, Plaintiff argues that there were genuine issues of material fact regarding whether Plaintiff was contributorily negligent. We have determined that Plaintiff failed to offer admissible evidence raising any genuine issue of fact regarding Hatley's negligence. Consequently, we have no need to resolve the issue of Plaintiff's contributory negligence. This assignment of error is overruled.

For the reasons discussed above, we conclude that the trial court did not err by granting summary judgment in favor of Hatley.

Appeal of Summary Judgment for Landis Defendants

[4] Plaintiff argues on appeal that the trial court erred by granting summary judgment for Landis Defendants, on the grounds that there are genuine issues of material fact regarding their negligence. We disagree and conclude that Plaintiff has failed to state any legal duty owed by the Landis Defendants to Plaintiff.

" 'The first prerequisite for recovery of damages for injury by negligence is the existence of a legal duty, owed by the defendant to the plaintiff, to use due care.' " If no duty exists, there logically can be neither breach of duty nor liability. *Peace River*, 116 N.C. App. at 511, 449 S.E.2d at 214 (quoting *Meyer v. McCarley and Co.*, 288 N.C. 62, 68, 215 S.E.2d 583, 587 (1975)). The respective legal duties of municipalities and of the North Carolina Department of Transportation (NCDOT) are addressed in several statutes. Regarding the duties of a municipality, N.C. Gen. Stat. § 160A-296(a) (2009) states in part:

A city shall have general authority and control over all public streets, sidewalks, alleys, bridges, and other ways of public passage within its corporate limits except to the extent that authority and control over certain streets and bridges is vested in the Board of Transportation . . .

However, N.C. Gen. Stat. § 136-45 (2009) provides in part that the "general purpose of . . . the [NCDOT] is that [the NCDOT] shall take over, establish, construct, and maintain a statewide system of hard-surfaced and other dependable highways . . . and maintain said highways at the expense of the entire State, and to relieve the counties and cities and towns of the State of this burden." N.C. Gen. Stat. § 136-18 (2009) provides in part that NCDOT

is vested with the following powers:

. . . .

(5) To make rules, regulations and ordinances for the use of, and to police traffic on, the State highways . . . and to provide ample means for the enforcement of same[.]

. . . .

(7) To assume full and exclusive responsibility for the maintenance of all roads other than streets in towns and cities, forming a part of the State highway system from date of acquiring said roads. . . .

. . . .

(16) [NCDOT] . . . shall have authority, under the power of eminent domain . . . to acquire title in fee simple to parcels of land for the purpose of . . . the establishment of rights-of-way or for the widening of existing rights-of-way or the clearing of obstructions that, in the opinion of the Department of Transportation, constitute dangerous hazards at intersections. . . .

N.C. Gen. Stat. § 136-66.1 (2009) addresses the status of roads in a municipality, and provides in part that:

(1) The State highway system inside the corporate limits of municipalities shall consist of a system of major streets and highways necessary to move volumes of traffic efficiently and effectively from points beyond the corporate limits of the municipalities through the municipalities[.] . . . [NCDOT] shall be responsible for the maintenance, repair, improvement, widening, construction and reconstruction of this system. . . .

(2) In each municipality the municipal street system shall consist of those streets and highways accepted by the munici-

pality which are not a part of the State highway system. The municipality shall be responsible for the maintenance, construction, reconstruction, and right-of-way acquisition for this system.

Finally, N.C. Gen. Stat. § 160A-297(a) (2009) provides that:

A city shall not be responsible for maintaining streets or bridges under the authority and control of the Board of Transportation, and shall not be liable for injuries to persons or property resulting from any failure to do so.

In the instant case, the following facts are not disputed: Just prior to the accident, Plaintiff traveled west on E. Round Street, a city street under the control and authority of the Town of Landis, to the intersection of E. Round Street with S. Main Street, a state highway under the control and authority of the North Carolina Department of Transportation. Plaintiff stopped at the stop sign placed at the intersection, then drove forward onto S. Main Street, and was driving on S. Main Street at the time of the collision.

Plaintiff argues that there is a genuine issue of material fact regarding whether the Landis Defendants were "negligent for failing to install appropriate traffic signaling devices, failing to inspect and maintain traffic control devices and failing to properly hire and train their employees." The parties agree that E. Round Street is within the corporate limits of the Town of Landis, which was responsible for it. However, it is undisputed that a stop sign had been placed at the intersection, and Plaintiff testified that she stopped at the stop sign and looked both ways before driving onto S. Main Street. This evidence establishes without contradiction that Plaintiff was able to see the stop sign in time to stop at the intersection. Plaintiff has failed to produce any evidence of a defect in the condition of E. Round Street, or any question about the adequacy of the stop sign to alert drivers of the need to stop.

Plaintiff also argues that there is an issue of fact regarding whether the Landis Defendants "were negligent for failing to maintain proper site distance for motorists on Round Street entering [the] intersection." It is undisputed that Plaintiff stopped at the corner of E. Round Street and S. Main Street, and there was no evidence that Plaintiff had a limited site distance on E. Round Street, or had any difficulty recognizing the stop sign at the intersection. Plaintiff finds fault with the site distance on S. Main Street, which is undisputably a

road under the authority of the North Carolina Department of Transportation (NCDOT). This assignment of error is overruled.

Plaintiff next argues that the trial court erred by granting summary judgment for the Landis Defendants, on the grounds that there was evidence that the Defendants were negligent "for failing to trim and/or maintain the trees/shrubbery" on the property at the corner of E. Round Street and S. Main Street. We disagree.

Plaintiff correctly notes that "municipalities have the positive duty to maintain their streets and sidewalks in a safe condition and keep them free of unnecessary obstructions and are civilly liable for negligently failing to discharge that duty[.]" *McDonald v. Village of Pinehurst*, 91 N.C. App. 633, 635, 372 S.E.2d 733, 734 (1988) (emphasis added). There is, however, no evidence that the view on E. Round Street was obstructed. If shrubbery obstructed the view down S. Main Street, the responsibility lies with NCDOT. This assignment of error is overruled.

Plaintiff next argues that there is a genuine issue of material fact regarding whether the Landis Defendants were negligent for failing to "reduce the speed limit at the intersection." The speed limit on E. Round Street is not at issue, as Plaintiff came to a stop when she reached the intersection. The speed limit on S. Main Street is not within the authority of these Defendants.

Plaintiff also cites testimony of her expert witness, Ernest Mallard, that the Defendants had certain duties as regards the safety of S. Main Street. However, the question of legal liability is a question of law for the court, and Mallard's personal opinions do not create any issue of fact. Nor was Mallard tendered as an expert in the law, statutory interpretation, or other relevant area. This assignment of error is overruled. Plaintiff also directs our attention to various avenues available to a municipality, such as requesting assistance from NCDOT in regulating traffic. However, Plaintiff identifies no authority for the proposition that these options are actually legal <u>duties</u>.

We conclude that:

[w]hile plaintiffs recognize that G.S. 136-66.1 and 160A-297(a) absolve the Town of responsibility for maintaining and improving [State Highway] 1009, nevertheless, they contend the Town and [NCDOT] share a dual responsibility for erecting appropriate highway signs[,] . . . We disagree. . . . [W]hen a city street becomes

a part of the State highway system, the Board of Transportation is responsible for its maintenance thereafter which includes the control of all signs and structures within the right-of-way. . . . [A] municipality has no liability for injuries resulting from a dangerous condition of such street unless it created or increased such condition.

*Shapiro v. Motor Co.*, 38 N.C. App. 658, 661-62, 248 S.E.2d 868, 870 (1978). We conclude that Plaintiff failed to produce any evidence that the Landis Defendants owed a legal duty to regulate the design, site distance, speed limit, or any other features of S. Main Street, which is the undisputed site of the accident.

For the reasons discussed above, we conclude that the trial court did not err by entering summary judgment for Hatley and for the Landis Defendants, and that its judgments should be

Affirmed.

Judges STEPHENS and HUNTER, Jr. concur.