An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1177

Filed: 6 October 2015

Guilford County, No. 13 CVS 5900

YANKA ADILENE CASTRO, a minor by and through her GAL, JULIE C. WALL,
Plaintiff,

v.

ZACHARY ANDREW THOMAS and HEATHER SHOAR THOMAS, Defendants.

Appeal by plaintiff from order entered 1 May 2014 by Judge Susan E. Bray in Guilford County Superior Court. Heard in the Court of Appeals 23 April 2015.

*Higgins Benjamin, PLLC, by Stephen E. Robertson, for plaintiff-appellant.*

*Vernis & Bowling of Charlotte, PLLC, by R. Gregory Lewis for defendants-appellees.*

GEER, Judge.

Plaintiff Yanka Adilene Castro, by and through her guardian ad litem Julie C. Wall, appeals from an order granting a directed verdict in favor of defendants Zachary Andrew Thomas ("defendant") and Heather Shoar Thomas on the issues of defendant's negligence and plaintiff's contributory negligence when defendant struck plaintiff with his vehicle as plaintiff was crossing the street. We hold that the trial court improperly invaded the province of the jury when it found that the speed of defendant's vehicle was not a contributing factor to the collision and that defendant

did not have an opportunity to see plaintiff before striking her. We hold that plaintiff presented sufficient evidence from which a jury could reasonably conclude that defendant was travelling faster than was prudent under the circumstances and that there was sufficient lighting such that defendant should have seen plaintiff in time to avoid hitting her had he been keeping a proper lookout.

With respect to plaintiff's contributory negligence, the fact that plaintiff crossed the street outside of a crosswalk in violation of N.C. Gen. Stat. § 20-174 (2013), while constituting some evidence of negligence, does not establish plaintiff's negligence as a matter of law when plaintiff also presented evidence that she looked both ways before crossing and did not see any vehicles coming.

Consequently, we conclude that the issue of defendant's negligence and plaintiff's contributory negligence should have been submitted to the jury. We, therefore, reverse and remand for a new trial.

Facts

Plaintiff offered evidence that tended to show the following facts. On 15 February 2012, at around 8:30 p.m., defendant's vehicle struck plaintiff as defendant was turning left onto Taft Avenue from South Park Street and plaintiff was crossing from the north side to the south side of Taft Avenue in Asheboro, North Carolina. Park Street is a four-lane road that runs north to south and has sidewalks on both sides. Taft Avenue is a two-lane road with no markings or sidewalks that begins in

the west at a T-intersection with Park Street and runs from west to east. The speed limit on both roads is 35 m.p.h. On the northeast corner of the intersection of Taft Avenue and Park Street, there is a wooded area with pine trees. A little farther to the east on the north side of Taft Avenue is a post office. At the time of the collision, it was dark outside, but Taft Avenue was illuminated by lighting from the post office on the north side of the street and a streetlight that was on the south side across from the post office. Plaintiff was wearing dark clothing and a flashing light on her right arm that was pointed forward but visible from plaintiff's side as well.

Prior to the collision, plaintiff, who was 13 years old at the time, was on a walk with other members of her family, including her mother Maria Romero, her 11-year-old brother Joshua Castro, her aunt Carmen Corona, and three younger cousins. They were walking south down Park Street in the sidewalk on the east side of the street. When plaintiff and her family reached Taft Avenue, everyone except for plaintiff's mother turned left to head towards a park. Ms. Romero decided that she would continue south down Park Street and go for a short run around the block before circling back to meet up with everyone at the park.

Plaintiff started walking east on the north side of Taft Avenue with the rest of her family. Plaintiff had almost reached the service entrance of the post office when she changed her mind and decided that she wanted to go with her mother. Before stepping off the curb, plaintiff asked her aunt if it was okay to cross the street. Ms.

Corona gave plaintiff permission to cross the street and reminded her to look both ways before crossing. Plaintiff looked both ways and did not see any cars coming down Taft Avenue. She also looked to see if there were any cars turning off Park Street, and did not see any cars there. Plaintiff then started "speed walking" across the street. When she was about two feet from the curb on the south side of Taft Avenue, she was struck by defendant's vehicle. All plaintiff remembered was that she "saw the lights" and then woke up on the ground.

Plaintiff's younger brother Joshua testified that he was watching plaintiff as she crossed the road. Joshua heard the sound of tires screeching as defendant's vehicle turned left from Park Street onto Taft Avenue. Defendant's vehicle struck plaintiff one or two seconds later and then "kept on going." Plaintiff's mother testified that she was just a few steps into her run down Park Street after having crossed Taft Avenue when she heard screeching tires and then a "thump." Plaintiff's aunt, who was walking east on the north side of Taft Avenue, testified that she heard a vehicle "coming really fast," then she "heard the tires" and heard "a sound as if two cars were crashing together." Plaintiff was knocked unconscious and her family ran to her. A second car that had been behind defendant's vehicle turned onto Taft Avenue, stopped, and its occupants called an ambulance.

When Officer Thomas Kindley of the Asheboro Police Department arrived at the scene, plaintiff was conscious and complaining of pain in her ankle, knee, neck, and arm. Paramedics arrived and transported plaintiff to the hospital.

Officer Kindley prepared an accident report which was submitted into evidence. Officer Kindley testified that during his investigation he "talked to everyone there that [he was] able to communicate with to get information pertaining to the collision." Specifically, he spoke to defendant, defendant's passenger, and plaintiff. However, plaintiff's brother Joshua testified that he did not speak to any police officers at the scene, and there was no evidence presented that Officer Kindley interviewed plaintiff's aunt or mother, who both testified through interpreters at trial.

Officer Kindley estimated, based upon where he found plaintiff and defendant's vehicle, that the point of impact was 29 feet east of Park Street on the south side of Taft Avenue and that defendant's vehicle travelled 198 feet after the impact before coming to a stop. There were no skid marks on the pavement before or after the point of impact. Officer Kindley did not recall if he had asked defendant why he did not stop for 198 feet after he hit someone, but the accident report indicates that defendant told Officer Kindley that he did not see plaintiff because it was dark. There were scratch marks on the right front area of defendant's hood, and the right side view mirror was damaged. Based upon Officer Kindley's investigation, he

estimated that defendant's vehicle was travelling 15 m.p.h. at the time of impact, and he testified that, in his opinion, "[s]peed was not a contributing factor."

Plaintiff did not call defendant as a witness or offer the testimony of an accident reconstruction expert. At the close of plaintiff's evidence, defendant moved for a directed verdict. In an order entered 1 May 2014, the trial court granted defendant's motion, finding in pertinent part that "Defendant's speed at impact was 15 mph. There were no tire impressions or marks from Defendant Thomas' vehicle. Speed was not a contributing factor to the accident. . . . Defendant Thomas did not see Plaintiff Yanka Castro and did not have [an] opportunity to see her before the collision." The trial court concluded that there was no evidence or reasonable inference of negligence on the part of defendant. In addition, the court determined that plaintiff had a duty pursuant to N.C. Gen. Stat. § 20-174 to yield the right of way to all vehicles on the road while crossing the road outside of a crosswalk, and her failure to yield to defendant's vehicle was contributory negligence that proximately caused her injuries. Plaintiff timely appealed the order to this Court.

<u>Motion to Dismiss Appeal</u>

We first address defendants' argument that this appeal should be dismissed on the grounds that plaintiff did not timely file the record on appeal with this Court. Plaintiff served the proposed record on defendants by mail on 3 September 2014. Pursuant to N.C.R. App. P. 11(b), the proposed record became the settled record on

appeal when defendants did not serve a notice of approval or objections, amendments, or a proposed alternative record by 6 October 2014 (within 30 days of 3 September 2014, plus three additional days for service by mail). Plaintiff was afforded 15 days after settlement of the record on 6 October 2014 -- until 21 October 2014 -- to file the record with this Court. N.C.R. App. P. 12(a). However, plaintiff did not file the record with this Court until 31 October 2014. It was, therefore, untimely.

However, this Court, in *Copper v. Denlinger*, 193 N.C. App. 249, 260, 667 S.E.2d 470, 479 (2008), *rev'd in part on other grounds,* 363 N.C. 784, 688 S.E.2d 426 (2010), held that a failure to timely file a record on appeal in violation of Rule 12 of the Rules of Appellate Procedure is a nonjurisdictional default. It is well settled that "a party's failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal." *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 198, 657 S.E.2d 361, 365 (2008). Further, this Court should not impose any sanctions on a party for nonjurisdictional rule violations unless the violation amounts to a "substantial failure" under N.C.R. App. P. 25 or a "gross violation" under N.C.R. App. P. 34. *Dogwood*, 362 N.C. at 199, 657 S.E.2d at 366.

Defendants have not made any argument that the violation here was substantial or gross. Nor has the delay in filing the record hindered this Court's review of the merits of the case or prejudiced defendants. Indeed, defendants candidly admit that on 7 October 2014, the day after the record was automatically

settled pursuant to N.C.R. App. P. 11(b), counsel for defendants sent counsel for plaintiff an email suggesting that plaintiff include the entire accident report in the record instead of only the second page. Even though this proposed amendment to the record was not timely and not properly served on plaintiff, it appears from our review of the record that plaintiff complied with defendants' request to include the complete accident report. Given these circumstances, we decline to dismiss the appeal or impose any sanctions on plaintiff.

## Discussion

On appeal, plaintiff argues that the trial court erred in granting defendants' motion for a directed verdict on the issues of defendant Zachary Thomas' negligence and plaintiff's contributory negligence. "The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991). "In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor." *Turner v. Duke Univ.*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989).

We first address whether there was sufficient evidence to submit to the jury on the issue of defendant Zachary Thomas' negligence. Plaintiff argues that she submitted sufficient evidence from which the jury could find that defendant was negligent in that he failed to drive at a proper speed, that he failed to maintain a proper lookout, or both. We agree.

With respect to defendant's speed, N.C. Gen. Stat. § 20-141(a) (2013) provides that "[n]o person shall drive a vehicle on a highway or in a public vehicular area at a speed greater than is reasonable and prudent under the conditions then existing." N.C. Gen. Stat. § 20-141(m) provides that "[t]he fact that the speed of a vehicle is lower than the [posted speed] limit[] shall not relieve the operator of a vehicle from the duty to decrease speed as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway, and to avoid injury to any person or property." As explained in *State v. Stroud*, 78 N.C. App. 599, 603, 337 S.E.2d 873, 876 (1985), these statutes, "construed together, establish a duty to drive with caution and circumspection and to reduce speed if necessary to avoid a collision, irrespective of the lawful speed limit or the speed actually driven."

In this case, the trial court found that defendant was travelling 15 m.p.h. in a 35 m.p.h. zone and that "[s]peed was not a contributing factor." However, these findings show that the trial court failed to view the evidence in the light most favorable to plaintiff, the non-movant, as is required when considering a motion for a

directed verdict. *See Turner*, 325 N.C. at 158, 381 S.E.2d at 710. Plaintiff presented evidence from which a jury could reasonably infer that defendant was travelling faster than 15 m.p.h. or, alternatively, that he was travelling faster than was prudent under the circumstances.[1]

Plaintiff's brother, aunt, and mother all heard the tires on defendant's vehicle screeching as he turned left onto Taft Avenue. Plaintiff's aunt testified that she heard the vehicle "coming really fast" and that the screeching sound was a result of "how fast the car was going, especially when it turned[.]" In addition, defendant's vehicle continued to travel for 198 feet after it hit plaintiff.

Although a jury cannot infer from this evidence the exact speed at which defendant was travelling, it could, at least, reasonably infer that had defendant been travelling at a reasonable speed, his tires would not have screeched when turning

---

[1]We note that the trial court's finding that defendant was travelling 15 m.p.h. is based upon Officer Kindley's estimation provided in the accident report. This Court has held that an investigating officer's estimation of a motorist's speed contained in an accident report is inadmissible. *See Blackwell v. Hatley*, 202 N.C. App. 208, 213, 688 S.E.2d 742, 746 (2010). As explained in *Blackwell*, " 'while it is competent for an investigating officer to testify as to the condition and position of the vehicles and other physical facts observed by him at the scene of an accident, his testimony as to his conclusions from those facts is incompetent.' " *Id.* (quoting *State v. Wells*, 52 N.C. App. 311, 314, 278 S.E.2d 527, 529 (1981)). Pursuant to Rule 702(i) of the Rules of Evidence, "[a] witness qualified as an expert in accident reconstruction who has performed a reconstruction of a crash, or has reviewed the report of investigation, with proper foundation may give an opinion as to the speed of a vehicle even if the witness did not observe the vehicle moving." In this case, Officer Kindley did not witness the accident, was not tendered as an expert in accident reconstruction, and did not explain how he determined the speed of defendant's vehicle. Nevertheless, plaintiff did not object at trial to the admission into evidence of Officer Kindley's estimation of defendant's speed, and plaintiff does not argue on appeal that the evidence was inadmissible.

and the distance between the point of impact and where defendant's vehicle finally stopped would have been much less than 198 feet.

Additionally, plaintiff testified that before crossing the street, she looked both ways and did not see any cars either on Taft Avenue or on Park Street. Taking plaintiff's testimony as true, a reasonable juror could find that defendant's vehicle was farther north on Park Street and had not yet reached the intersection with Taft Avenue. Plaintiff also testified that she was speed walking across the street, and the accident report indicates that plaintiff ran across the street. This evidence suggests that in the time it took plaintiff to speed walk or run across Taft Avenue, defendant's vehicle travelled from somewhere north of the Taft Avenue intersection where he was not visible to plaintiff, turned left across the two north bound lanes of Park Street, travelled 26 feet on Taft Avenue, and struck plaintiff. A jury could reasonably infer that he had to have been travelling faster than 15 m.p.h. to accomplish this. Even assuming, without deciding, that defendant was travelling only 15 m.p.h., or in any event did not exceed the 35 m.p.h. speed limit, pursuant to *Stroud*, such a finding, standing alone, is not dispositive of the issue whether defendant was travelling too fast under the circumstances or whether speed was a contributing factor to the collision.

In addition to a motorist's duty to maintain a proper speed, "[e]very motorist is under [a] duty to exercise due care to avoid colliding with pedestrians on a roadway.

Such duty of due care includes to keep a proper lookout, i.e., to look in the direction of travel, to see what is there to be seen." *Troy v. Todd*, 68 N.C. App. 63, 66, 313 S.E.2d 896, 898 (1984). Accordingly, "the failure of a motorist to see a person in or upon a roadway at night before striking him constitutes some evidence of negligence." *Id.*

Here, the trial court found that defendant "did not see [plaintiff] and did not have [an] opportunity to see her before the collision." This finding is based upon evidence that it was dark outside and that plaintiff was wearing dark clothing. However, plaintiff also presented evidence that Taft Avenue was illuminated by lights from the post office on the north side of the road and a street lamp on the south side of the road and that plaintiff was wearing a blinking light on her right arm that should have been visible to people approaching plaintiff from the right, as defendant was. This evidence is sufficient to allow a reasonable jury to find that defendant could have seen plaintiff had he been keeping a proper lookout. Further, the evidence shows that plaintiff was two feet away from the south edge of Taft Avenue and was "clipped" by the right side of defendant's vehicle. There was no evidence that there were any other vehicles or pedestrians on Taft Avenue at the time of the collision. Thus, a jury could conclude that had defendant seen plaintiff, he could have avoided a collision by simply veering slightly to the left.

In conclusion, we hold that plaintiff presented sufficient evidence to require submission to the jury of the issue of defendant's negligence. *See id.* at 66, 313 S.E.2d at 898 (holding there was sufficient evidence that defendant driver failed to keep a proper lookout to support a finding of negligence where evidence tended to show that it was dark outside, pedestrian was wearing dark clothes and was walking with back to defendant about three feet from the shoulder, defendant was travelling 35 to 40 m.p.h. with his headlights on and could see 200 feet ahead,  and defendant saw pedestrian an instant before striking him with right front headlight of his car). *See also McCoy v. Dowdy*, 16 N.C. App. 242, 247, 192 S.E.2d 81, 85 (1972) (reversing directed verdict in favor of defendant driver on the issue of negligence in action by pedestrian struck by automobile when plaintiff presented evidence that "intersection was illuminated by a street lamp, that defendant's headlights were on, that there was no traffic heading in defendant's direction at the time which could have momentarily distracted or blinded him, and that he never reduced the speed of his automobile"). The trial court therefore erred in granting a directed verdict on the issue of negligence.

We next address whether the directed verdict may nevertheless be upheld on the grounds that plaintiff was contributorily negligent as a matter of law.  Plaintiff argues that the trial court was precluded from finding that plaintiff was contributorily negligent as a matter of law because she was 13 years old at the time

of the accident and, in North Carolina, there is a rebuttable presumption that a child between the ages of seven and 14 is incapable of contributory negligence. *See Hoots v. Beeson*, 272 N.C. 644, 650, 159 S.E.2d 16, 21 (1968).

Plaintiff, however, did not raise this argument in the trial court. It is well established that "the law does not permit parties to swap horses between courts in order to get a better mount" on appeal. *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934). Consequently, plaintiff may not argue this theory for the first time on appeal, and we do not consider it.

Even assuming, without deciding, that this argument was preserved, plaintiff has not cited any authority suggesting that the rebuttable presumption that a 13 year old is incapable of negligence automatically precludes a finding of contributory negligence as a matter of law. Indeed, as defendant correctly points out, the burden is on the defendant to rebut the presumption, which " 'may be overcome by evidence that the child did not use the care which a child of its *age, capacity, discretion, knowledge,* and *experience* would ordinarily have exercised under the same or similar circumstances.' " *Hoots*, 272 N.C. at 651, 159 S.E.2d at 21 (quoting *Weeks v. Barnard*, 265 N.C. 339, 340, 143 S.E.2d 809, 810 (1965)). In other words, the presumption alters the standard of care to be applied to the child's behavior depending upon the evidence presented regarding the plaintiff's age, capacity, discretion, knowledge, and experience.

At trial, Joshua, plaintiff's younger brother, testified during cross-examination that his mother and other adults in his family had instructed both plaintiff and him how to safely cross streets, including teaching them the need to look both ways, to wait for the cars to pass, and to not cross when cars were coming. Joshua explained that he knew how to cross a street safely because he, his mother, and plaintiff are "runners." Ms. Romero also testified that their family often walks for exercise and that she has been instructing plaintiff how to safely cross the street since plaintiff was three years old.

Given this testimony, we cannot say as a matter of law that defendant failed to rebut the presumption that plaintiff is incapable of negligently crossing the street. Rather, the question whether plaintiff acted negligently depends upon whether plaintiff exercised the degree of care that a 13-year-old girl who had been taught by her parents from a young age how to safely cross the street, and who had experience as a runner, would have exercised under similar circumstances.

The trial court concluded that plaintiff was contributorily negligent based upon its finding that plaintiff violated N.C. Gen. Stat. § 20-174(a), which provides that "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." However, N.C. Gen. Stat. § 20-174(e) further provides that "[n]otwithstanding the provisions of this section, every driver

of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

This Court has emphasized that "[e]vidence of a violation of G.S. § 20-174 does not constitute negligence or contributory negligence *per se,* but rather is some proof of negligence, to be considered with the rest of the evidence in the case." *Troy*, 68 N.C. App. at 65-66, 313 S.E.2d at 898. Nevertheless, such a violation, in certain circumstances, may amount to contributory negligence as a matter of law. *Culler v. Hamlett*, 148 N.C. App. 372, 375, 559 S.E.2d 195, 198 (2002). However, "[t]he general rule is that a directed verdict for a defendant on the ground of contributory negligence may only be granted when the evidence taken in the light most favorable to plaintiff establishes her negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom. Contradictions or discrepancies in the evidence even when arising from plaintiff's evidence must be resolved by the jury rather than the trial judge." *Clark v. Bodycombe*, 289 N.C. 246, 251, 221 S.E.2d 506, 510 (1976).

In this case, the evidence is undisputed that plaintiff crossed the street in an area outside of a crosswalk. However, plaintiff testified that she looked both ways before crossing and did not see any cars. Even assuming that plaintiff failed to yield the right of way to defendant, there is also evidence that defendant failed to use due

care in avoiding a collision with plaintiff. Because "[r]ational persons could logically draw different conclusions as to whether plaintiff's injuries proximately resulted from the negligence of the defendant or from the plaintiff's contributory negligence[,]" "the evidence is for the jury as to plaintiff's contributory negligence, if any, as well as defendant's negligence, if any." *Sessoms v. Roberson*, 47 N.C. App. 573, 580, 580-81, 268 S.E.2d 24, 28, 28-29 (1980) (reversing trial court's directed verdict in favor of driver even though "evidence [was] sufficient to raise an inference, among others, that the plaintiff failed to yield the right-of-way and that, without due regard for his own safety, he stepped into the path of the defendant's car"). *See also Pompey v. Hyder*, 9 N.C. App. 30, 33, 175 S.E.2d 319, 321 (1970) (reversing directed verdict in favor of defendant-driver, explaining: "Even if defendant were correct in her contention that plaintiff's evidence showed that plaintiff was crossing the street at an angle and not in an unmarked crosswalk at the intersection, the case would still have been one for the jury. There was evidence from which the jury could find that defendant motorist failed to use due care to avoid colliding with the plaintiff pedestrian as required by law. G.S. s 20-174(e).").

Defendant, nevertheless, cites *Blake v. Mallard*, 262 N.C. 62, 136 S.E.2d 214 (1964), and *Meadows v. Lawrence*, 75 N.C. App. 86, 330 S.E.2d 47 (1985), *aff'd per curiam*, 315 N.C. 383, 337 S.E.2d 851 (1986), in support of his argument that plaintiff was contributorily negligent as a matter of law. In *Blake*, the pedestrian was struck

by the defendant's vehicle while crossing a straight, six-lane highway at night. 262 N.C. at 63, 136 S.E.2d at 215. When the plaintiff started " 'walking normally' " across the road, the defendant was about 200 yards to the plaintiff's right and was approaching at a speed of 60 m.p.h. *Id.* at 65, 136 S.E.2d at 217. The plaintiff continued into the car's path and first observed it when she entered its lane of travel, at which time it was only 45 feet away. *Id.* At this point, the defendant could not have avoided hitting the plaintiff even if he had only been travelling 20 m.p.h. *Id.* Plaintiff, on the other hand, could have avoided a collision by simply stopping where she was. *Id.* The Supreme Court affirmed the judgment of nonsuit against the plaintiff on the grounds that plaintiff's negligence was at least one proximate cause of her injuries. *Id.* at 67, 136 S.E.2d at 218. Relevant to this case, the Court in *Blake* noted that "if plaintiff had looked she would have seen [the defendant's] automobile, the lights of which were visible for a mile. *Its speed did not suddenly bring it into her range of vision after she had looked when it was not visible.*" *Id.* at 66, 136 S.E.2d at 217 (emphasis added).

Here, in contrast to the facts in *Blake*, plaintiff presented evidence that defendant's vehicle was not visible when she first looked before crossing the street. Unlike the plaintiff in *Blake*, plaintiff had less time in which to react once the headlights on defendant's vehicle would have been visible. Further, under the

circumstances in this case, a jury could reasonably conclude that defendant had the ability to avoid the collision and was in a better position than plaintiff to do so.

The evidence presented at trial likewise distinguishes this case from *Meadows*. Defendants cite *Meadows* for the proposition that, in cases where a pedestrian is struck by a vehicle while crossing a road outside of the crosswalk at night, "[i]f the road is straight, visibility unobstructed, the weather clear, and the headlights of the vehicle in use, a plaintiff's failure to see and avoid defendant's vehicle will consistently be deemed contributory negligence as a matter of law." 75 N.C. App. at 89-90, 330 S.E.2d at 50. In this case, viewing the evidence in the light most favorable to plaintiff, defendant's vehicle was not visible to plaintiff when she started crossing the street. Rather, there was evidence presented that would support a conclusion that defendant was north of the Taft Avenue intersection and that the pine trees on the northeastern corner of the intersection obstructed plaintiff's view before he made the sharp left turn onto Taft Avenue. Thus, this is not a case where defendant's vehicle approached from a straight road with visibility unobstructed, and the rule articulated in *Meadows* is inapplicable.

In conclusion, we hold that the issues of negligence and contributory negligence should have been submitted to the jury, and the trial court erred in granting a directed verdict in favor of defendants. *See Ragland v. Moore*, 299 N.C. 360, 367, 261 S.E.2d 666, 670 (1980) (reversing order granting summary judgment to defendants

based on plaintiff-pedestrian's contributory negligence because genuine issue of fact existed as to whether plaintiff's failure to yield right-of-way was one of proximate causes of her injuries when plaintiff looked before she crossed the road and increased her speed once she realized that defendant was approaching at high speed); *Landini v. Steelman*, 243 N.C. 146, 149, 90 S.E.2d 377, 379-80 (1955) (holding in action by pedestrian struck by vehicle that, even assuming pedestrian failed to yield right of way as required by statute, evidence that plaintiff looked both ways and did not see any oncoming traffic before crossing street presented jury questions as to negligence, proximate cause, and contributory negligence).

NEW TRIAL.

Judges ELMORE and DILLON concur.

Report per Rule 30(e).